REID, Judge.
This is a Workmen’s Compensation suit arising out of injuries allegedly sustained by the claimant Leon Thornton during his course of employment for Schuylkill Products Company Inc., the defendant herein. The accident took place on August 11th, 1965 when the claimant received burns to his foot after stepping into molten lead. Workmen’s Compensation payments were made from August 12th, 1965 through November 3rd, 1965 when Thornton was released by his doctors and returned to his job for Schuylkill.
Subsequently Thornton continued to work for Schuylkill until September 6th, 1966 a period of some ten (10) months until he suffered a hernia and was forced to quit work again so that he could undergo an operation. Workmen’s Compensation payments were again paid from September 11th, 1966 through February 18th, 1967, at which time he was released and returned to his employment.
Suit was filed on October 24th, 1966, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, alleging that Leon Thornton was totally and permanently disabled due to the injuries suffered to his foot in August of 1965.
After receiving injuries to his foot the claimant was treated by Dr. James W. Lorio, a general practitioner, in the Parish of East Baton Rouge, who referred Thornton to Dr. A. K. Mclnnis, Jr., a surgeon. Dr. Mclnnis with Dr. Lorio assisting performed a skin graft to Thornton’s foot, and on November 3rd, 1965 he was released so that he could return to his employment. The hernia operation was performed by Dr. Howard Hansen, who during the course of his treatment for the hernia operation examined the skin grafts and as a, result was called upon to testify by the plaintiff in the trial on the merits.
On December 14th, 1967 a Motion for Summary Judgment was filed on behalf of American Mutual Liability Insurance Company, the alleged insurer of Schuylkill, and on January 15th, 1968 the judgment was signed in favor of American Mutual Liability Insurance Company, dismissing the claim of Leon Thornton, since there was no policy in effect at the time of Thornton’s injuries. On February 2nd, 1968, the case was heard on its merits and judgment was rendered in favor of the plaintiff and against the defendant Schuylkill awarding Workmen’s Compensation benefits from February 7th, 1967 until October 12th, 1967. From this judgment the defendant, Schuylkill Products Company Inc., appealed suspensively and devolutively and the plaintiff appealed devolutively. The defendant specified as error:
*912 “1. The trial court erred in considering lay testimony when there was no conflict in the medical testimony.
2. The trial Court erred in awarding Workmen’s Compensation for “possible mild discomfort.”
On the other hand the plaintiff contends that the trial judge erred in not awarding Workmen’s Compensation benefits for total and permanent injury or in the alternative in not awarding Workmen’s Compensation benefits for the loss of a foot.
The first issue to be decided is whether or not the trial court erred in considering lay testimony, in view of the medical testimony on hand. It is of course well settled in this State that where there is no conflict in medical testimony that lay testimony should not be considered by the Court. (Ezell v. Employers Insurance of Wausau, 212 So.2d 500; Diggs v. Weitz Company, La.App., 176 So.2d 700; Guillory v. Southern Farm Bureau Casualty Insurance Company, 237 La. 374, 111 So.2d 314; Lee v. Royal Indemnity Company, La.App., 149 So.2d 606.) Our examination of the record reveals that there is no conflict in any consequence in the medical testimony and as a result we feel that the trial court erred in finding any disability resulting from the injury to the claimant’s foot after he was discharged in November of 1965. In this regard Dr. Mclnnis testified as follows:
“Q. What results did you obtain in this skin graft?
A. An excellent result between 99 and 100 per cent of the graft which is unusual.
Q. You considered that an extremely successful procedure then?
A. Yes.” (Tr. 132)
Also, on page 132 of the transcript Dr. Mclnnis testified as to his findings on examination of January 24, 1967:
“Revealed that the grafts were pliable, they were soft, there were no keloid formations and at that time he represented a perfectly well healed skin graft of the burn. He also had a full range of motion in his ankle and there was no swelling of the extremity and the patient was able to do a full knee squat with no difficulty.”
Dr. Mclnnis then testified as follows:
“Q. Based on your examination of January 24, 1967 were you able to arrive at an opinion as to whether or not the patient was then able to perform general labor type work ?
A. Yes.
Q. And what was your opinion?
A. I thought that he could.” (Tr. 132-133)
Accordingly it was also the testimony of Dr. Hansen that there was no permanent disability as a result of the burns suffered by the claimant and the subsequent skin grafts. Further Dr. Hansen who treated the claimant for his hernia and had an occasion to examine the claimant’s foot at that time testified as follows:
“Q. At the time you examined this patient on August 12, 1967, did you see any objective symptoms which would justify or explain the residual symptoms that this patient was giving you ?
A. I did not.” (Tr. 50)
While it is true that Dr. Mclnnis stated in his report, marked Plaintiff-1, that the claimant would at certain periods of time experience some mild discomfort in the form of skin irritation during periods of extreme hot and cold we do not feel that this is sufficient to find that the claimant was in any way disabled. (Milligan *913 v. Fidelity & Casualty Company of New York, La.App., 200 So.2d 104, and Williams v. Travelers Insurance Company, La.App., 157 So.2d 356; Moreau v. Employers’ Liability Assurance Corp., La.App., 180 So.2d 835.)
For the foregoing reasons the judgment of the trial court is reversed and judgment is hereby rendered herein in favor of the defendant, Schuylkill Products Co., Inc., and against the plaintiff, Leon Thornton, rejecting plaintiff’s demands and dismissing this suit, all costs, including costs of appeal, to be borne by the plaintiff.
Reversed and rendered.